722 P.2d 356

**U.S. LIFE TITLE COMPANY OF ARIZONA, an Arizona corporation, Plaintiff/Counterdefendant/Appellant,**

v.

**William Raymond BLISS, Defendant/Counterclaimant/Appellee.**

**No. 2 CA–CIV 5485.**

Court of Appeals of Arizona, Division 2, Department A.

January 30, 1986.
Reconsideration Denied March 25, 1986.
Review Denied July 8, 1986.

Jennings, Strouss & Salmon by Riney B. Salmon, II and Jefferson L. Lankford, Phoenix, for plaintiff, counterdefendant/appellant.

Mohr, Hackett, Pederson, Blakley & Randolph, P.C. by Robert C. Hackett, Thomas K. Chenal and William R. Richardson, Phoenix, for defendant/counterclaimant/appellee.

## OPINION

BIRDSALL, Presiding Judge.

This appeal is from a partial summary judgment which decided all issues between these parties but did not resolve the litigation between other parties in the trial court. The judgment contained Rule 54(b) language and is appealable. We affirm.

The appellee, William R. Bliss, was the seller under an agreement by which George P. Salemo, Jr., and later his nominee, Catherine Salemo, his wife, were purchasers of a residential property in the Phoenix area. The sales price was $795,000. The appellant, U.S. Life Title Company of Arizona, was employed as escrow agent. Written escrow instructions were given to appellant which contained the usual provisions detailing how the sales price was to be paid. Closing was delayed, but when the time finally arrived, the buyer's agent gave the appellant what appeared to be a certified check for $114,023.80. The certification was forged, however, and the Chase Manhattan Bank, upon which the check was drawn, refused payment. In the meantime, however, the appellant delivered the closing documents, including the deed from Bliss to Salemo, and disbursed $74,422.28 to Bliss, the cash amount due him on closing. Subsequently, the appellant and Bliss learned for the first time that the check had been refused.

The appellant recorded a lis pendens and commenced this action against Salemo for the amount of the forged check. The complaint was later amended to state claims for relief against Bliss as an additional defendant. The complaint as to Bliss was in two counts. The first count sought recovery of the amount of the forged check on the strength of an indemnity provision in the escrow instructions. The second count, realleging the indemnity agreement, sought restitution on the theory of unjust enrichment.

Bliss may have suffered no damage as a result of the appellant's conduct. The closing was on September 22, 1980. The lis pendens was recorded October 14. On or about October 22, Bliss purchased another house from the Tillotsons. As part payment, he assigned a note of Salemo's he had received as part payment of the purchase on the first home. That obligation was secured by a deed of trust on the property. Tillotson then foreclosed the deed of trust and secured the property. He then resold it to Bliss, who in turn sold it to another buyer for $755,000. Thus Bliss received $49,745 from Salemo through escrow and the $74,422.28 at closing and then recovered the property which he had sold. The appellant contends Bliss received benefits of $310,000 to $375,000 from the various transactions. We have not verified this arithmetic or reasoning. This is, however, the appellant's contention and some evidence seems to permit the conclusion.

In his motion for summary judgment and on appeal, Bliss contends: 1) that the appellant cannot prevail because it violated its fiduciary duties under the escrow instructions; 2) that the escrow instructions were not followed because the appellant closed the transaction, including delivery of the deed, before the terms of the sale had been performed; 3) that Salemo had not performed because the check was not honored and the appellant should not have accepted mere delivery of the check as performance; 4) that the appellant should have verified

with the bank that the check was good even though it purported to be certified; and 5) that he orally requested the appellant's escrow officer to secure verification from the bank. As to his last contention, the evidence before the trial court on the motion for summary judgment confirms that Bliss made this request, that the escrow officer made several unsuccessful attempts to contact the bank, and that the appellant closed anyway on the strength of the certification. The evidence further shows that other checks tendered by Salemo during the transaction had been dishonored and that appellant had notice of this fact. The appellant submitted evidence that the escrow industry practice in the community was to accept, as good and genuine, and as payment, a certified check. The appellant also points to the following provision in the escrow instructions:

"12. Direct that all money payable hereunder be paid to Escrow Agent which, upon receipt thereof, shall deposit such funds in a general escrow account in one or more banks doing banking business in Arizona. Disbursement of any funds may be made by checks of Escrow Agent. Escrow Agent shall be under no obligation to disburse any funds represented by check or draft, and no check or draft shall be payment to Escrow Agent in compliance with any of the requirements hereof, until it is advised by the bank in which deposited that such check or draft has been honored, unless Escrow Agent specifically agrees in writing to accept liability for the sufficiency thereof."

The appellant argues that it never agreed in writing, or otherwise, to accept liability for the sufficiency of the check.

We must decide whether the appellant is entitled to proceed on either an indemnity or a restitution theory. We consider these theories in that order.

## INDEMNITY

■ The escrow instructions provided that the seller (Bliss):

"Will Deliver to Escrow Agent a deed of the property from Seller to Buyer to be held by Escrow Agent until the terms hereof have been performed, at which time it shall deliver said deed to Buyer."

This is the very essence of escrow; and the purpose for having an independent escrow agent. See *Young v. Bishop*, 88 Ariz. 140, 353 P.2d 1017 (1960). The terms included a requirement that the buyer (Salemo) pay the amount required at closing. Salemo did not perform. The only payment made for closing was the check with the forged certification. When U.S. Life Title proceeded with the closing, including delivery of the deed, it breached the quoted provision of the escrow agreement. The title company assumed the risk when it elected to close on the strength of the check. Paragraph 12 is no defense. While it may be argued that the title company did not "agree to accept liability for the sufficiency of the check" in so many written words, it did more than that. It accepted the worthless check as payment and closed the transaction. This was, at least, the equivalent of an agreement to be responsible.

■ An indemnitee, the title company here, may not recover for losses arising from its own breach of contract unless the indemnity agreement so provides in clear and unequivocal terms. See *Royal Properties, Inc. v. Arizona Title Insurance and Trust Co.*, 13 Ariz.App. 376, 476 P.2d 897 (1971). The indemnity provision of the escrow agreement contained no such language. It read:

"SELLER AND BUYER:

9. Will indemnify and save harmless Escrow Agent against all costs, damages, attorney's fees, expenses and liabilities which it may incur or sustain in connection with these instructions or the escrow or any court action arising therefrom and will pay the same upon demand."

If the appellant's breach is viewed as negligence, it would also be precluded from recovery by indemnification. See *Southern Pacific Co. v. Gila River Ranch, Inc.*, 105 Ariz. 107, 460 P.2d 1 (1969). The duties of an escrow agent are defined in the escrow agreement and must be strictly construed. *Tucson Title Insurance Co. v. D'Ascoli*, 94 Ariz. 230, 383 P.2d 119 (1963); *Malta v. Phoenix Title & Trust Co.*, 76 Ariz. 116, 259 P.2d 554 (1953).

### RESTITUTION

Turning now to the second count of the appellant's complaint we cannot see how the appellee was unjustly enriched. Bliss received exactly the amount to which he was entitled as the seller of the property, the amount computed by the title company. What Bliss did afterward was outside of the Salemo sale and the escrow agreement. The appellant does not contend that his conduct was fraudulent. The facts here do not give rise to a claim of unjust enrichment as in *Artukovich & Sons, Inc. v. Reliance Truck Co.*, 126 Ariz. 246, 614 P.2d 327 (1980) or *State v. Martin*, 59 Ariz. 438, 130 P.2d 48 (1942).

The appellee will be awarded attorney's fees on appeal as requested upon filing a statement of costs pursuant to Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S. (1985 Supp.), and *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

Affirmed.

HOWARD and FERNANDEZ, JJ.